## UNITED STATES v. CERTAIN LAND SITUATED IN CITY OF ST. LOUIS, MO., et al.

No. 1920.

District Court, E. D. Missouri, E. D.

Aug. 17, 1943.

Harry C. Blanton, U. S. Atty., of St. Louis, Mo., for plaintiff.

Charles J. Dolan, of St. Louis, Mo., for all other defendants.

Donald Gunn, of St. Louis, Mo., for defendant Collector of Revenue.

Daniel Bartlett, of St. Louis, Mo., for defendant Ford Motor Co.

COLLET, District Judge.

The sole question involved is whether the state, county and city taxes for the entire year 1942, shall be withheld from the property owner and paid over to the tax authorities or whether a sum equal to the taxes for that part of the year during which the property owner owned the property and during which the property was taxable should be withheld.

Several millions of dollars have been paid to hundreds of Missouri citizens in eminent domain proceedings upon the basis set out in United States v. Certain Land in City of St. Louis, Mo., D.C., 29 F.Supp. 92. That decision applied specifically to the so-called Jefferson Memorial proceedings. There was no appeal by any of the many interested property owners, the State or the City of St. Louis, within the boundaries of which latter municipality that property was situated. The decision was based primarily upon considerations of fairness and justice and the exercise of a judicial discretion which it was assumed the statute conferred.[1] It has been followed in all Federal condemnation proceedings in Missouri up to the present time without criticism. The attention of the City of St. Louis has been called to decisions from other jurisdictions in which the annual taxes have been held indivisible and not susceptible to pro-ration. Muskogee County, Okl. et al. v. United States, 10 Cir., 133 F.2d 61; Board of County Commissioners, etc., v. Seber, 10 Cir., 130 F.2d 663; United States v. Certain Parcels of Land in Philadelphia, 3 Cir., 130 F.2d 782; United States v. Certain Parcels of Land in City of San Diego et al., D.C., 44 F.Supp. 936; United States v. Certain Lands in City of Eau Claire, Wis. et al, D. C., 49 F.Supp. 225. The city authorities very properly consider it their duty to urge a reconsideration of our previous ruling in the light of those decisions.

The law of Missouri relative to the date upon which the lien of taxes attaches need not be again reviewed. It has neither been changed nor modified since our decision heretofore referred to. But in fact that phase of the Missouri tax law is not pertinent to the determination of the question now presented because it is admitted that the lien of the taxes for the year 1942 had attached to the property, prior to the time of the taking, on May 23, 1942. The question therefore is, as heretofore indicated, whether the property owner shall be compelled to pay taxes on property which it

---

[1] 40 U.S.C.A. § 258a: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

formerly owned, during a period when the Government owned and had possession of it.

There is no provision for a personal judgment for real property taxes in Missouri. The taxes follow the property, and enforcement of their payment is accomplished by distraint of personalty or sale of the realty. State ex rel. McKee v. Clements, 281 Mo. 195, 219 S.W. 900; State ex rel. and to Use of Parish v. Young, 327 Mo. 909, 38 S.W.2d 1021; Chilton et al. v. Drainage Dist. No. 8 of Pemiscot County, 330 Mo. 468, 50 S.W.2d 645; Duffley v. McCaskey, 345 Mo. 550, 134 S.W.2d 62, 126 A.L.R. 853. But when the Federal Government acquires the property for a public use there can be no sale or appropriation of the property for the payment of due and unpaid taxes,[2] hence the duty of the Court to protect the local municipalities by withholding from the fund, which stands in the place of the property, the amount of the tax debt.

The courts which have declined to relieve the property owner of the payment of taxes for that part of the year for which the tax was assessed but during which the Government owned it, have done so because it was found the local tax laws did not authorize the division of the annual lump-sum taxes, and not from any expressed doubt concerning the equity or fairness of a division such as we have followed. Judge Neterer in United States v. Certain Parcels of Land, D.C., 44 F.Supp. 936, expressly recognizes the applicability of the local law in determining the rights of the parties.[3] Judge Goodrich speaking for the Third Circuit Court of Appeals, said: "But the tax liability in such a case is a question of state law, and in the St. Louis case, as has been noted since (United States v. Certain Parcels of Land in City of San Diego, D.C.

S.D.Cal.1942, 44 F.Supp. 936), the federal court concluded that Missouri law had not fixed the extent of tax liability nor the lien therefor at the time of condemnation." 130 F.2d loc. cit. 783.

While the Supreme Court in United States v. Alabama, supra, declined the request of the Government for the cancellation of a tax lien made effective by local statute as of a date prior to the taking by the Federal Government, the decision was based upon the fact the lien had by statute become effective prior to acquisition and the Government took the title subject to this encumbrance. The result of the Alabama case is that the tax for the entire year was secured by the lien and its payment probably could be enforced should the property subsequently come into the hands of a private owner. But it is one thing to assume that Alabama may properly make taxes payable for an entire year in advance and collect those taxes regardless of whether the property remains subject to taxation for the entire period, and quite another to contemplate the enforced payment of taxes in Missouri, which by the State Constitution and the decision of the highest court of the State may not be imposed or collected. State ex rel. v. Baumann, 348 Mo. 764, 153 S.W.2d 31. Nor was this question considered in Muskogee County v. United States, 10 Cir., 133 F.2d 61. In Board of County Commissioners v. Seber, 130 F.2d 663, the Tenth Circuit Court of Appeals recognized and applied the Oklahoma tax system and the conclusion reached in that case resulted from the application of the local law.

The Missouri reason for levying taxes on real estate has been said to be that the right of ownership carries the burden as an incident,[4] or that the right of and to the use and the benefits from the use of property carries with it the obligation.[5] However,

---

[2] United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327.

[3] "The tax lien status however, must be determined by the law of the state, and, if established, must be followed by the United States Court." loc. cit. 937 of 44 F.Supp.

[4] "Even though taxes have been levied and assessed against a tract of land while under private ownership, if it be afterwards acquired by a governmental agency, such taxes may not be collected. Bannon v. Burnes, C.C.W.D.Mo., 39 F. 892. And see cases cited in the notes in 30 A.L.R. 413, and 2 A.L.R. 1353. Since the City

is seeking to purchase the land in its public governmental capacity and not as a mere fiduciary, the land becomes immune from taxation as soon as the City becomes the owner of it and such immunity would extend to taxes previously assessed and levied." State ex rel. v. Baumann, 348 Mo. 764, 153 S.W.2d 31, 34.

[5] "We have found no better reasoned decision on this point than Wells v. Mayor, etc., of City of Savannah, 87 Ga. 397, 13 S.E. 442. In that case the Georgia Supreme Court, speaking through Bleckley, C. J., said: 'The value of property consists in its use, and he who owns the use

the property owner herein had neither after May 23d, and hence neither of these assigned reasons can apply. But it has long been ineffectual to require a reason for the levying of taxes as a prerequisite to their payment. Hence the inquiry turns to whether there is any obligation for the payment of taxes on real property in Missouri, after its acquisition by the Federal Government. The Missouri Constitution, Article 14, Section 1, Mo.R.S.A. provides: "No tax shall be imposed on lands the property of the United States; * * *."

■ It would appear to necessarily follow that the debt necessary to support an obligation to pay the taxes for the latter part of the year 1942, never having come into existence, the lien or security for the payment of that nonexistent debt must be held to have likewise never actually come into existence because the contingency, i.e. the continued private ownership—failed, or that the lien theoretically existing, may not be enforced for want of a supporting debt or obligation.

■ But the City contends that equity must follow the law and that the Missouri statute providing that the "lien shall continue * * * until all taxes, * * * shall be fully paid or the land sold or released * * *." (Sec. 10941, R.S.Mo. 1939, Mo.R.S.A.) creates an obligation to pay the taxes for the full year. But the lien may not be enforced for the payment of a non-existent debt and the tax is fully paid when all that may constitutionally be due has been paid. To illustrate: Suppose that a property owner leases property for a year with the rental payable monthly and a chattel mortgage or other lien given to secure the payment of a sum equal to the rental for the entire year, but at the time of, or prior to the making of those agreements another, equally valid and binding, had been made that the tenant could surrender the premises on giving proper notice and no rental should be due or "imposed" for the remainder of the year. Could a Court of Equity be found which would in "following the law" relating to chattel mortgage liens enforce that lien for the entire amount of the debt stated therein when the facts were made clear that the tenant had properly surrendered the premises at the end of five months? Obviously, the collateral agreement would be enforced as a part of the lien contract. Yet the City argues in effect that the Constitution of Missouri should be ignored in considering the relation between a Missouri taxpayer and the State. For if it not be ignored it must as effectively prevent the accrual of the debt and the enforcement of a lien for the collection of taxes after the owner has surrendered his property to the Government as the landlord's agreement precludes him from enforcing his lien for an entire year's rent.

■ In Missouri, property becomes immune from taxation when appropriated to public use. Judge Douglas, speaking for the Missouri Supreme Court, said: "Even though taxes have been levied and assessed against a tract of land while under private ownership, if it be afterwards acquired by a governmental agency such taxes may not be collected. Bannon v. Burnes, C.C.W.D. Mo., 39 F. 892. And see cases cited in notes in 30 A.L.R. 413, and 2 A.L.R. 1353. Since the City is seeking to purchase the land in its public governmental capacity and not as a mere fiduciary, the land becomes immune from taxation as soon as the City becomes the owner of it and such immunity would extend to taxes previously assessed and levied." State ex rel. v. Baumann, 348 Mo. 764, 153 S.W.2d 31, 34.

It therefore appears that legal as well as equitable considerations require the denial of the City's claim. That claim is denied.

forever, though it be on a condition subsequent, is the true owner of the property for the time being. * * * Where taxation is ad valorem, values are the ultimate objects of taxation, and they to whom the values belong should pay the taxes.'" Municipal Acceptance Corporation v. Canole, 342 Mo. 1170, 119 S.W.2d 820, 824.